FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 28 2014

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA

v.                                    CASE NO. 4:14CV *634-JM*

$1,789,520.00 IN U.S. CURRENCY                                    DEFENDANT

## VERIFIED COMPLAINT *IN REM*

The United States of America, by Christopher R. Thyer, United States Attorney for the Eastern District of Arkansas, and Assistant U.S. Attorney Cameron C. McCree, for its verified complaint *in rem* against the above-described property, states:

This case assigned to District Judge *Moody*
and to Magistrate Judge *Kay*

## NATURE OF THE ACTION

1.     This is an action to forfeit to the United States $1,789,520.00 in U.S. Currency ("the Defendant Currency").

2.     This action is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355(a).

4.     This Court has *in rem* personal jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b).

5.     Venue is proper in the Eastern District of Arkansas under 28 U.S.C. §§ 1355(b)(1) and 1395 because the events giving rise to this forfeiture action occurred in this district. Venue is also proper because the Defendant Currency is located in this district. The Defendant Currency is presently in the custody of the United States Marshals Service in Little Rock, Arkansas.

<u>BASIS FOR FORFEITURE</u>

6.     The Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it constitutes (1) money intended to be furnished in exchange for a controlled substance; (2) proceeds traceable to such an exchange; and (3) money used and intended to be used to facilitate a violation of the Controlled Substances Act.

<u>FACTS</u>

7.     The Defendant Currency was seized from Perfecto Ruano and Walda Luna in May 2014 following a traffic stop on Interstate 40 Westbound near mile marker 73, London, Pope County, Arkansas.

8.     On May 1, 2014, Arkansas State Police Trooper ("Trp.") Chase Melder stopped a 2006 Toyota Sienna van for making two illegal lane changes.

9.     When he approached the car, Trp. Melder noticed indicators of narcotics trafficking such as the use of a single key in the ignition and conflicting stories from the driver, Ruano, and the passenger, Luna, regarding their travel plans.

10.     Trp. Melder separately asked Ruano and Luna whether the vehicle contained any drugs or large amounts of currency, and both said that no such items were in the vehicle.

11.     Trp. Melder asked Ruano for permission to search the vehicle, and Ruano granted his request.

12.     Trp. Melder began searching the vehicle on the side of the highway, but moved

2

the search to the Sheriff's office after finding a large bundle of undetermined amount of U.S. Currency inside of a pillow located in the front passenger seat where Luna was sitting.

13.     During his search of the vehicle, Trp. Melder found a safe inside of a towel warmer's cardboard box.  Trp. Melder asked Luna what was inside, and she responded, "papers." A subsequent search revealed that the safe contained four large bundles of an undetermined amount of U.S. Currency wrapped in duct tape.

14.     Officers also located two large bundles of an undetermined amount of U.S. currency inside of a trash can box.  One bundle was wrapped in duct tape and the other in tin foil.

15.     Further, officers discovered three large duct taped bundles of an undetermined amount of U.S. currency inside a Ninja Blender box.

16.     Additionally, officers located $3,520.00 of loose U.S. currency inside a purse containing Luna's North Carolina driver's license.

17.     All of the currency was combined and counted.  A later count of the currency determined it to be $1,789,520.00.

18.     Law enforcement used a K-9 to detect for the presence of drugs on the currency, and the K-9 unit positively alerted to the presence of narcotics.

19.     Law enforcement seized the money and interviewed Ruano and Luna about the seized currency.  Drug Enforcement Agency Special Agent Ricardo Kennedy and Task Force Officer John R. Temple conducted the interviews.

20.     Luna explained to the DEA agents that she and Ruano were traveling to California to visit her cousin, Diane, who was graduating high school (Luna had previously identified her cousin as "Elizabeth.").

21.     Luna said that Ruano was the father of her children and that she lived with him.

3

22.     When asked a series of questions about the money, Luna said that it was for down payments on new family businesses, including a salon, a taqueria, and a jewelry store. Luna also said that she planned to purchase a house in California.

23.     Luna said that a portion of money came from Ruano and that he gave her his earnings for the purpose of negotiating these business ventures.

24.     When asked about the amount, Luna said that the money totaled approximately $1.8 million. Luna said that approximately $1 million was from her business, "Beverly Jewelry," and that the rest was from Ruano's trucking business. She said they earned the money over the past 30 years.

25.     Luna asserted that the money was duct taped so that it would not fall apart and get lost.

26.     In his interview, Ruano presented a different version of the facts.

27.     Ruano said that he and Luna were traveling to California for Luna's niece's birthday party and that the niece was named "Josolin."

28.     Ruano denied living with Luna.

29.     Ruano said that he owned a trucking business, but when asked specific questions about the business, he admitted that he did not have a Department of Transportation number and that he only had one truck.

30.     Ruano said that he gave Luna money over the years from his trucking company as well as money given to him by his deceased brother. Ruano said that his deceased brother gave him a thousand dollars a week for over two years leading to his death and that the money was gambling winnings.

31.     Ruano reiterated, though, that all of the money found in the vehicle belonged to

Luna.

32.     Ruano said that he did know specifically how much money he and Luna were traveling with, just that it was in excess of one million dollars.

33.     Ruano denied knowing why Luna was taking the money to California or why she did not deposit it in the bank.  Ruano said that Luna did have a bank account that she used with her business, "Jewelry Beverly."

34.     The dog alert, the manner of packaging of the money, and the inconsistent stories, among other factors, indicate that the Defendant Currency is drug money.

WHEREFORE, the United States prays that the Court issue an arrest warrant *in rem* as provided by Supplemental Rule G(3)(b), which the United States will execute on the Defendant Currency as provided by 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant Currency be forfeited to the United States; that due process issue to enforce the decree of forfeiture; and for all other proper relief.

Dated:  October 27, 2014.

CHRISTOPHER R. THYER
UNITED STATES ATTORNEY

By:_____

CAMERON C. McCREE (2007148)
Assistant U. S. Attorney
P. O. Box 1229
Little Rock, Arkansas 72203
(501)340-2624
Cameron.McCree@usdoj.gov

## VERIFICATION

I, John R. Temple, verify and declare under penalty of perjury that (1) I am a Taskforce Officer with the Drug Enforcement Administration; (2) I have read the foregoing Verified Complaint *in rem* and know its contents; and (3) the matters contained in the Verified Complaint *in rem* are true to my own knowledge, except that those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are (1) my participation in this investigation, (2) information learned from oral and written reports prepared by other law enforcement officers, and (3) information from witnesses, physical surveillance, seized contraband, and other physical evidence.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: October 27, 2014.

JOHN R. TEMPLE, Taskforce Officer
Drug Enforcement Administration